## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KINSALE INSURANCE COMPANY

     Plaintiff,

vs.                                CASE NO: 4:19-cv-00544-MW-MAF

PULTEGROUP, INC., PULTE
HOME COMPANY, LLC,
LEVELTECH, INC. and, as
Interested Parties, JOSEPH
VILLANELLA, CATHERINE
VILLANELLA, RICK CLAUSS,
RUSSELL BAKER, LUIZA CUKO,
KEN BITNER, DON
ROBERTSTON, ROBERT
NIEDERMEYER, MICHAEL
SCHWEBEL, JODECI
LAWRENCE, MARJORIE
LAWRENCE, CHARLES
BAUMANN, LORA NASBY,
WILLIE DAY, JOAN LITTLE,
ARTHUR LITTLE, CHERYL
STOEBE, DONALD CAMPBELL,
TOM FREDERICKSEN, CESAR
ORELLANA, CRYSTAL TESH,
KJERSTI ALLEN, DARRYL
ALLEN, ARLINE GOLDBERG,
JOHN GRANT, MICHAEL HILL,
ROBERT SANDS, and SUSAN
MISHKIN,

     Defendants.

_____/

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

KINSALE INSURANCE COMPANY ("Kinsale") files its amended complaint against PULTEGROUP, INC., PULTE HOME COMPANY, LLC (together, "Pulte"); LEVELTECH, INC. ("Leveltech"); and CRYSTAL TESH, CESAR ORELLANA, LUIZA CUKO, JOSEPH VILLANELLA, CATHERINE VILLANELLA, RICK CLAUSS, RUSSELL BAKER, KEN BITNER, DON ROBERTSTON, ROBERT NIEDERMEYER, MICHAEL SCHWEBEL, JODECI LAWRENCE, MARJORIE LAWRENCE, CHARLES BAUMANN, LORA NASBY, WILLIE DAY, JOAN LITTLE, ARTHUR LITTLE, CHERYL STOEBE, DONALD CAMPBELL, TOM FREDERICKSEN, KJERSTI ALLEN, DARRYL ALLEN, ARLINE GOLDBERG, JOHN GRANT, MICHAEL HILL, ROBERT SANDS, and SUSAN MISHKIN (the "Homeowners"), as interested parties; and alleges:

## NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 to establish that there is no insurance coverage for Pulte or Leveltech under two commercial general liability policies Kinsale issued to Leveltech as the Named Insured. In particular, Kinsale seeks to establish there is no coverage for repair claims submitted by the Homeowners, which Pulte tendered to Kinsale and Leveltech in various letters demanding "DEFENSE AND INDEMNITY" (the

"Demands").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship. This Court also has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs. For instance, Pulte tendered claims by the 28 Homeowners and has conceded that repairs required for only two of these claims are at least $53,675.

3.      Venue is proper in this district since "a substantial part of the events … giving rise to the claim[s] occurred" in this district. *See* 28 U.S.C. § 1391(b)(2). More specifically, Pulte has demanded Kinsale indemnify Pulte for repair claims pursuant to a unilateral consent decree entered against Pulte (the "Consent Decree"), which resolved a state court lawsuit venued in this district by the Florida Office of the Attorney General ("OAG"). Although the Homeowners do not reside in this district, they are located within the state and their participation in this action will be minimal because Pulte, Leveltech, Kinsale, and their representatives should have access to all information pertinent to this coverage action. Indeed, Kinsale is merely joining the Homeowners as nominally interested parties pursuant to the Court's recent order (DE 34.) Moreover, this Court is equally, if not more, capable of resolving the parties' coverage dispute than the courts in any other district.

4.      All conditions precedent have occurred, been performed, or have been

waived.

## THE PARTIES

5.     Kinsale is an Arkansas corporation with its principal place of business in Richmond, Virginia. Kinsale does business in Florida as a surplus lines insurer. Pertinent here, Kinsale issued two commercial general liability policies to Leveltech as the Named Insured: Policy No. 0100018262-0, effective from 03/21/2014 to 03/21/2015; and Policy No. 0100018262-1, effective from 03/21/2015 to 03/21/2016.

6.     Defendant Leveltech is a Florida corporation with its principal place of business in Florida.

7.     Defendant PulteGroup, Inc. is a Michigan corporation with its principal place of business in Georgia. Defendant PulteGroup, Inc. conducts business through the activities of its subsidiaries, including through Defendant Pulte Home Company, LLC.

8.     Defendant Pulte Home Company LLC is a Michigan limited liability company authorized to do business in Florida and is a subsidiary of Defendant PulteGroup, Inc. Pulte Home Company, LLC maintains offices in Florida and transacts business throughout Florida. Upon information and belief, no member of Pulte Home Company LLC is a citizen of Arkansas or Virginia so there is complete diversity.

9.      Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Crystal Tesh, as an interested, party defendant. Upon information and belief, Tesh is a resident of Duval County, Florida.

10.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Cesar Orellana, as an interested, party defendant. Upon information and belief, Orellana is a resident of Duval County, Florida.

11.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Luiza Cuko, as an interested, party defendant. Upon information and belief, Cuko is a resident of Duval County, Florida.

12.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Joseph Villanella, as an interested, party defendant. Upon information and belief, Mr. Villanella is a resident of St. Johns County, Florida.

13.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Catherine Villanella, as an interested, party defendant. Upon information and belief, Ms. Villanella is a resident of St. Johns County, Florida.

14.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Rick Clauss, as an interested, party defendant. Upon information and belief, Clauss is a resident of St. Johns County, Florida.

15.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Russell Baker, as an interested, party defendant. Upon information and belief,

Baker is a resident of St. Johns County, Florida.

16.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Ken Bitner, as an interested, party defendant. Upon information and belief, Bitner is a resident of St. Johns County, Florida.

17.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Don Robertston, as an interested, party defendant. Upon information and belief, Robertston is a resident of St. Johns County, Florida.

18.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Robert Niedermeyer, as an interested, party defendant. Upon information and belief, Niedermeyer is a resident of St. Johns County, Florida.

19.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Michael Schwebel, as an interested, party defendant. Upon information and belief, Schwebel is a resident of St. Johns County, Florida.

20.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Jodeci Lawrence, as an interested, party defendant. Upon information and belief, Mr. Lawrence is a resident of Clay County, Florida.

21.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Marjorie Lawrence, as an interested, party defendant. Upon information and belief, Ms. Lawrence is a resident of Clay County, Florida.

22.    Pursuant to the Court's order (DE 34), Kinsale is joining homeowner

Charles Baumann, as an interested, party defendant. Upon information and belief, Baumann is a resident of St. Johns County, Florida.

23.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Lora Nasby, as an interested, party defendant. Upon information and belief, Nasby is a resident of St. Johns County, Florida.

24.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Willie Day, as an interested, party defendant. Upon information and belief, Day is a resident of St. Johns County, Florida.

25.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Joan Little, as an interested, party defendant. Upon information and belief, Ms. Little is a resident of St. Johns County, Florida.

26.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Arthur Little, as an interested, party defendant. Upon information and belief, Mr. Little is a resident of St. Johns County, Florida.

27.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Cheryl Stoebe, as an interested, party defendant. Upon information and belief, Stoebe is a resident of St. Johns County, Florida.

28.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Donald Campbell, as an interested, party defendant. Upon information and belief, Campbell is a resident of St. Johns County, Florida.

29.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Tom Fredericksen, as an interested, party defendant. Upon information and belief, Fredericksen is a resident of St. Johns County, Florida.

30.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Kjersti Allen, as an interested, party defendant. Upon information and belief, Ms. Allen is a resident of Clay County, Florida.

31.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Darryl Allen, as an interested, party defendant. Upon information and belief, Mr. Allen is a resident of Clay County, Florida.

32.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Arline Goldberg, as an interested, party defendant. Upon information and belief, Goldberg is a resident of St. Johns County, Florida.

33.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner John Grant, as an interested, party defendant. Upon information and belief, Grant is a resident of St. Johns County, Florida.

34.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Michael Hill, as an interested, party defendant. Upon information and belief, Hill is a resident of St. Johns County, Florida.

35.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Robert Sands, as an interested, party defendant. Upon information and belief,

Sands is a resident of St. Johns County, Florida.

36.     Pursuant to the Court's order (DE 34), Kinsale is joining homeowner Susan Mishkin, as an interested, party defendant. Upon information and belief, Mishkin is a resident of St. Johns County, Florida.

## THE OAG'S ENFORCEMENT ACTION AGAINST PULTE FOR VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

37.     On December 28, 2018, the OAG filed the lawsuit styled: *Office of the Attorney General, Department of Legal Affairs, State of Florida vs. Pultegroup, Inc. and Pulte Home Company, LLC*, Case No. 2018-CA-02723, in the circuit court of the Second Judicial Circuit of Leon County, Florida. A copy of the complaint is attached as Exhibit "A."

38.     The OAG's lawsuit was "an enforcement action and an action on behalf of consumers for injunctive relief, equitable relief, restitution, damages, civil penalties, and attorneys' fees and costs for … violations of the Florida Deceptive and Unfair Trade Practices Act[.]" (Complaint, ¶1.)

39.     The OAG alleged that "[f]rom 2008 through 2016, Pulte sold more than 23,000 homes in Florida[, bu]t …. failed to disclose to certain home buyers that homes sold by Pulte were not built in accordance with applicable building codes." (¶¶10-11.)

40.     As a result, the OAG alleges that "hundreds of homes built by Pulte in

Florida have needed repairs due to problems arising from construction defects." (¶12.)

41.    The OAG also alleged that "Pulte unfairly denied certain Florida homeowners' repair claims for various reasons, including lack of homeowner maintenance, when the home's problems were attributable to defective construction rather than lack of maintenance." (¶13.)

42.    The OAG also alleged Pulte "unfairly denied certain Florida homeowners' repair claims without performing an adequate inspection of the home" and even withheld at least one customer's deposit unfairly. (¶¶14-15.)

43.    The OAG's complaint includes a single count for Pulte's alleged violation of the FDUTPA, which provides in pertinent part:

> Defendants PulteGroup, Inc. and Pulte Home Company, LLC have committed the following acts or practices that are unfair, deceptive, or unconscionable in willful violation of Chapter 501, Part II, Florida Statutes:
>
> a.    Failing to disclose to certain home buyers in Florida that the homes were being constructed in violation of applicable building codes;
>
> b.    Unfairly denying certain homeowners' repair claims for various reasons, including lack of homeowner maintenance, when the home's problems were attributable to defective construction rather than lack of maintenance;
>
> c.    Unfairly denying certain Florida homeowners' repair claims without performing an adequate inspection of the home; and
>
> d.    Unfairly withholding a customer's deposit in certain instances.

(¶19.)

44.    On behalf of the State of Florida, the OAG's complaint seeks "equitable relief … to redress Defendants' violations of law." The OAG's complaint also seeks "statutory damages, restitution, … equitable disgorgement for the benefit of the state and its consumers," civil penalties under the FDUTPA, injunctive relief, attorney's fees, and costs.

### THE OAG'S ENFORCEMENT ACTION WAS RESOLVED BY A CONSENT DECREE WITH PULTE

45.    On December 28, 2018, Pulte and the OAG entered into the Consent Decree, which resolved the enforcement action. A copy of the Consent Decree is attached as Exhibit "B."

46.    Under the Consent Decree, Pulte is required to pay the OAG $4,700,000; make various changes to its business practices; and perform settlement repairs to resolve "all pending consumer complaints to the OAG and future requests for repairs not already pending before the OAG from consumers, who own a home built by Pulte … for a period of eighteen (18) months from the date of the" Consent Decree. (Consent Decree, ¶10.)

47.    The Consent Decree also provides a procedure for Pulte's prospective handling of claims by homeowners for repairs. More specifically, a "homeowner may make a Settlement Repair Claim under paragraph 10 of this Stipulated

Judgment by submitting a request to Pulte via e-mail or by submission of a written claim form for evaluation or repair of the home." (¶11.) Pulte is also required to "make and maintain a record of all Settlement Repair Claims for the duration of this Stipulated Judgment." (¶12.) "Following receipt of a Warranty Claim or Settlement Repair[,] Pulte shall perform a visual, in-person inspection of the home." (¶19.) If repairs are required, Pulte is required to provide the homeowner with "a detailed written statement describing the repairs to be made and providing an estimated schedule for the repairs." (¶20.)

### PULTE FAILED TO NOTIFY KINSALE OF THE OAG'S LAWSUIT UNTIL NEARLY SIX MONTHS AFTER IT ENTERED INTO THE CONSENT DECREE

48.    Pulte first notified Kinsale of the OAG's lawsuit nearly six months after entry of the Consent Decree in several letters.

49.    In its letters, Pulte demanded Kinsale defend and indemnify Pulte as an additional insured under the policies issued to Leveltech from repair claims made by Homeowners pursuant to the Consent Decree.

50.    Pulte also demanded a defense and indemnity from Leveltech, through Kinsale, as Leveltech's contractual indemnitee under the subcontract between Pulte and Leveltech (the "Subcontract") that allegedly governs Leveltech's alleged work on the pertinent homes. A copy of the Subcontract is attached as Composite Exhibit "C."

51.    At minimum, Pulte has issued demands for all 28 of the Homeowners. Copies of all, but one of Pulte's Demands are attached as composite Exhibit "D."[1]

52.    The Homeowners own homes in communities of 20 or more individual, residential condominium units, town homes, or single houses, which were all developed or constructed by Pulte.

## THE KINSALE CGL POLICIES

53.    Kinsale issued a commercial general liability policy to Leveltech as the Named Insured, bearing Policy No 0100018262-0 and effective from 03/21/2014 to 03/21/2015. This policy was renewed under Policy No. 0100018262-1, which was effective form 03/21/2015 to 03/21/2016. A copy of Kinsale Policy No. 0100018262-0 is attached as Exhibit "E" and a copy of Policy No. 0100018262-1 is attached as Exhibit "F."[2]

54.    The Kinsale policies include the same endorsements and principal coverage form, CG 00 01 10 01, which provides in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

---

[1] Kinsale has copies of Pulte's Demands for claims by all Homeowners, except Susan Mishkin. Nevertheless, Pulte's counsel has acknowledged that it also issued a Demand for her claim.

[2] For filing purposes, premium and rating information has been redacted from the policies.

1.   **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and …

2.   **Exclusions**

This insurance does not apply to: …

    **a.**    **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b.**    **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged. …

**j.** **Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

     **(4)**     Personal property in the care, custody or control of the insured;

     **(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

     **(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use. …

## SECTION II – WHO IS AN INSURED

**1.**    If you are designated in the Declarations as: …

**d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. …

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or

limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS …

2.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)**    How, when and where the "occurrence" or offense took place;

   **(2)**    The names and addresses of any injured persons and witnesses; and

   **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.**    If a claim is made or "suit" is brought against any insured, you must:

   **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)**    Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.**    You and any other involved insured must:

   **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)**    Authorize us to obtain records and other information;

    **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4.**    **Other Insurance**

If other valid and collectible insurance is available  to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.**    **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.**    **Excess Insurance**

This insurance is excess over:

    **(1)**    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(a)**    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part. …

## SECTION V – DEFINITIONS …

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means: …

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. …

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

      **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)**    The providing of or failure to provide warnings or instructions.

   **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

   **a.**    Means:

      **(1)**    Work or operations performed by you or on your behalf; and

      **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

   **b.**    Includes

      **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **(2)**    The providing of or failure to provide warnings or instructions.

55.    Both policies include an Exclusion – Residential Condominiums, Townhomes, Timeshares or Tract Housing endorsement. (*See* Form CAS3030 0112.) This exclusion provides in pertinent part:

## EXCLUSION – RESIDENTIAL CONDOMINIUMS, TOWNHOMES, TIMESHARES OR TRACT HOUSING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

The following exclusion is added to this policy:

> This insurance does not apply to "bodily injury" or "property damage" included within the "products completed operations hazard" arising out of, resulting from, caused by, contributed to, or in any way related to work on any:
>
> 1.   Residential condominium, town home or single house in a project or development in which more than twenty (20) individual residential condominium units, town homes or single houses have been built by you or on your behalf, or, are in any stage of development, planning or construction by you or on your behalf; or
>
> 2.   Location which has been or becomes converted by you or on your behalf into residential condominiums or town homes of more than twenty (20) individual condominium units or town homes, regardless of whether or not any insured knew or had involvement in the conversion or the conversion is prior to, during or subsequent to any insured's work at the location; or
>
> 3.   Timeshare development. …

56.    Both policies also include an Exclusion – EFS (Exterior Insulation and Finish Systems) endorsement. (*See* Form CAS3008 0314.) This exclusion provides in pertinent part:

## EXCLUSION – EFS (EXTERIOR INSULATION AND FINISH SYSTEMS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
The following exclusion is added to this policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving the following:

1.    The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2.    "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" or any part thereof, is used on the part of that structure containing that component, fixture or feature.

The following definition is added to the **DEFINITIONS SECTION**:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1.    A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2.    The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.    A reinforced or unreinforced base coat;

4.    A finish coat providing surface texture to which color may be added; and

5.    Any flashing, caulking or sealant used with the system for any purpose.

57.     Both policies also include an Additional Policy Exclusions endorsement. (*See* Form CAS3043 0117.) This endorsement provides in pertinent part:

## ADDITIONAL POLICY EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
PRODUCTS/COMPLETED    OPERATIONS    LIABILITY
COVERAGE
LIQUOR LIABILITY COVERAGE

The following exclusions are added to this policy: …

**PRIOR INJURY OR DAMAGE EXCLUSION**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" which begins or takes place before the inception date of this policy or before the retroactive date of this policy if claims-made coverage applies, regardless of whether or not such "bodily injury", "property damage" or "personal and advertising injury" is known to any insured. This exclusion shall apply even though the nature and extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury", "property damage" or "personal and advertising injury" may be or may involve a continuous or repeated exposure to substantially the same general harm or condition.

If you are a contractor, builder or developer the following also applies:

All "property damage" to units of or within a single project or development and arising from the same general type of harm or condition, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such

damage may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm or condition which also continues or takes place (in the case of repeated exposure to the substantially the same general harm or condition) during the policy period of this policy. …

**CLASSIFICATION LIMITATION EXCLUSION**

This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this policy.

**DUTY TO DEFEND EXCLUSION**

Where there is no coverage under this policy, there is no duty to defend.

**PROFESSIONAL LIABILITY EXCLUSION**

This insurance does not apply to professional liability, malpractice, errors, or omissions or acts of any type including rendering or failure to render any type of professional service nor to any expenses or any obligation to share damages with or repay anyone else who must pay damages from same, unless such Professional Liability coverage is specifically endorsed onto this policy.

58.    Both policies also include an Additional Insured – Owners, Lessees, or Contractors – Completed Operations endorsement. (*See* Form CG 20 37 07 04.)

This endorsement provides in pertinent part:

**ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**SCHEDULE**

| Name of Additional Insured Person(s) or Organization(s) | Location and Description of Completed Operations |
|---|---|
| Blanket, as required by written contract; | EXCLUDES ALL NEW RESIDENTIAL CONSTRUCTION – <br><br> "Your work" does not include "new residential construction", which means any building or structure not previously occupied, and designed or intended for occupancy in whole or in part as a residence by any person or persons. "New residential construction" does not include apartments or apartment buildings or assisted living facilities. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

## COUNT I – NO COVERAGE UNDER THE INSURING AGREEMENTS

59.    Kinsale incorporates paragraphs 1 through 58.

60.    The insuring agreement of each Kinsale policy is only triggered by "property damage" caused by an "occurrence" during the policy period.

61.     The insuring agreements have not been triggered because the OAG's complaint seeks statutory and economic damages for Pulte's alleged violations of the FDUTPA, not "property damage".

62.     The insuring agreements also have not been triggered because there is no indication of any claim or lawsuit seeking covered damages caused by an "occurrence."

63.     The insuring agreements also have not been triggered because there is no underlying claim or lawsuit for "property damage" that occurred during either Kinsale policy period.

64.     Accordingly, Kinsale has no duty to defend or pay any damages for Pulte or Leveltech.

### COUNT II – NO COVERAGE FOR PULTE UNDER THE ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – COMPLETED OPERATIONS ENDORSEMENT

65.     Kinsale incorporates paragraphs 1 through 58.

66.     Each policy's Additional Insured – Owners, Lessees, or Contractors – Completed Operations endorsement limits coverage for additional insureds to "liability for … 'property damage' caused, in whole or in part, by 'your work' … performed for that additional insured and included in the 'products-completed operations hazard'[,]" except operations involving "new residential construction."

67.     There is no coverage for Pulte as an additional insured because no

one, besides Pulte, blames Leveltech for the purported defects, deficiencies, or problems with the Homeowners' homes.

68.   There is also no coverage for Pulte as an additional insured because any work on the homes necessarily qualifies as "new residential construction," which is not covered under the Additional Insured – Owners, Lessees, or Contractors – Completed Operations endorsement.

69.   Accordingly, Kinsale has no duty to defend or pay any damages for Pulte.

## COUNT III – NO COVERAGE FOR PULTE BECAUSE PULTE BREACHED THE POLICY'S TERMS AND CONDITIONS

70.   Kinsale incorporates paragraphs 1 through 58.

71.   As a condition to coverage, Section IV.2.d. of the policies prohibits all insureds from "voluntarily mak[ing] a payment, assum[ing] any obligation, or incur[ring] any expense, other than for first aid, without [Kinsale's] consent."

72.   As a condition to coverage, Section IV.2.c. of the policies requires all insureds to "[i]mmediately send [Kinsale] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'."

73.   Assuming *arguendo* that Pulte qualifies as an insured of the Kinsale policy, Pulte breached Section IV.2.d. by failing to obtain Kinsale's consent before entering into the Consent Decree.

74.   Assuming *arguendo* that Pulte qualifies as an insured of the Kinsale

policy, Pulte also breached Section IV.2.c. by failing to notify Kinsale of the OAG's lawsuit until nearly six months after the Consent Decree.

75.    Accordingly, even if Pulte somehow qualifies as an insured, Kinsale has no duty to defend or pay any damages for Pulte.

## COUNT IV – NO COVERAGE UNDER THE RESIDENTIAL CONDOMINIUMS, TOWNHOMES, TIMESHARES OR TRACT HOUSING EXCLUSION ENDORSEMENT

76.    Kinsale incorporates paragraphs 1 through 58.

77.    The Residential Condominiums, Townhomes, Timeshares or Tract Housing Exclusion bars coverage for "property damage" "arising out of, resulting from, caused by, contributed to, or in any way related to work on" the condominiums, town homes or single houses of the Homeowners.

78.    Accordingly, Kinsale has no duty to defend or pay any damages for Pulte or Leveltech.

## COUNT V - NO COVERAGE UNDER VARIOUS POLICY EXCLUSIONS

79.    Kinsale incorporates paragraphs 1 through 58.

80.    Exclusion a. Expected or Intended Injury bars coverage to the extent any "property damage" was "expected or intended from the standpoint of" Leveltech or any other insured.

81.    Exclusion b. Contractual Liability bars coverage to the extent Leveltech is obligated to pay damages by reason of its assumption of liability in a

contract or agreement.

82.     Exclusion j.(6) bars coverage to the extent any "property that must be restored, repaired or replaced because [Leveltech's] work … was incorrectly performed on it."

83.     Exclusion k. Damage to Your Product bars coverage to the extent any product provided by Leveltech was damaged or caused damage to other property.

84.     Exclusion l. Damage to Your Work bars coverage for any "property damage" arising out of or any part of Leveltech's work and included in the "products-completed operations hazard".

85.     Exclusion m. Damage to Impaired Property or Property Not Physically Injured bars coverage to the extent any property is less useful because it incorporates work or products provided by Leveltech, or because Leveltech failed to fulfill the terms of its alleged subcontract with Pulte.

86.     The Fungi or Bacteria Exclusion endorsement bars coverage to the extent any "property damage" "would not have occurred, in whole or in part, but for the actual, alleged or threatened, inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria."

87.     The Exclusion – EFS (Exterior Insulation and Finish Systems) endorsement bars coverage to the extent any claimants seeks covered damages because of an exterior insulation and finish system.

88.    The Prior Injury or Damage Exclusion bars coverage to the extent any "property damage" began or took place prior to the inception of either Kinsale policy period.

89.    The Classification Limitation Exclusion bars coverage to the extent any claim or lawsuit for "property damage" involves operations by Leveltech other than its operations as a "Residential Framing and Concrete Contractor."

90.    The Professional Liability Exclusion bars coverage to the extent any "property damage" arises out of any insured's rendering or failure to render professional services.

91.    Accordingly, Kinsale has no duty to defend or pay any damages for Pulte or Leveltech.

## COUNT VI – NO COVERAGE BASED ON PUBLIC POLICY

92.    Kinsale incorporates paragraphs 1 through 58.

93.    It is against public policy to allow coverage for Pulte's alleged violations of the FDUTPA.

94.    Accordingly, Kinsale has no duty to defend or pay any damages for Pulte.

## REQUESTED RELIEF

Kinsale respectfully requests that this Court:

a.    Take jurisdiction and adjudicate the rights of the parties under the Kinsale policies;

b.   Find and declare that Kinsale does not have a duty to defend Pulte or Leveltech from any claim or lawsuit arising out of the OAG's enforcement action, including any claims or lawsuits for repairs pursuant to the Consent Decree.

c.   Find and declare that Kinsale does not have to pay any judgment against Pulte or Leveltech arising out of the OAG's enforcement action, including any claims or lawsuits for repairs pursuant to the Consent Decree.

d.   Award Kinsale its costs in this action, as well as any other relief that this Court deems, equitable, just, and proper.

Respectfully submitted,

/s/ SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
sina.bahadoran@clydeco.us
**ANDRES CORDOVA**
Florida Bar No. 0118147
andres.cordova@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646

ATTORNEYS FOR KINSALE

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on April 24, 2020, this document was filed via the CM/ECF system. I further certify that, beyond the Homeowners who will be served with process, I am unaware of any other non-CM/ECF participants.

<u>/s/ANDRES CORDOVA</u>
ANDRES CORDOVA
